UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NEB MORROW, III,

                         Plaintiff,

              v.

GOV. ANDREW CUOMO,
COMMISSIONER ANTHNY ANNUCCI,
STEPHEN MAHER, DOCCS's Deputy Commissioner,
BARBARA OST, Law Library Coordinator,
SUPERINTENDENT JOSEPH H. NOETH,
R. COVENY, Deputy Superintendent,
BLACKBURN, Program Committee Chairman,
BRIAN HEMBROOK, Law Library Supervisor,
JOEY CLINTON, Deputy Superintendent,

                         Defendants.
_____

REPORT
and
RECOMMENDATION

17-CV-1109Si(F)

APPEARANCES:        NEB MORROW, III, *Pro se*
                      10-A-6112
                      Sing Sing Correctional Facility
                      354 Hunter Street
                      Ossining, New York  10562-5498

                      LETITIA A. JAMES
                      ATTORNEY GENERAL, STATE OF NEW YORK
                      Attorney for Defendants
                      DENETRA D. ROBERTS
                      Assistant Attorney General, of Counsel
                      Main Place Tower
                      Suite 300A
                      350 Main Street
                      Buffalo, New York  14202

## **JURISDICTION**

This case was referred to the undersigned by Honorable Lawrence J. Vilardo[1] on

November 20, 2019, for all pretrial matters including preparation of a report and

_____

[1] By Text Order entered January 6, 2020 (Dkt. 34), the matter was reassigned to Honorable John L. Sinatra, Jr.

recommendation on dispositive motions.  The matter is presently before the court on Defendants' motion to dismiss for failure to state a claim (Dkt. 26), filed October 15, 2019.

## **BACKGROUND**

Plaintiff Jason Armstrong ("Plaintiff"), an inmate in the care and custody of New York Department of Corrections and Community Supervision ("DOCCS"), and proceeding *pro se*, commenced this civil rights action on November 1, 2017.  Plaintiff alleged claims against Defendants, including New York Governor Andrew Cuomo and employees of New York Department of Corrections and Community Supervision ("DOCCS"), pertaining to incidents occurring while Plaintiff was housed at Attica Correctional Facility ("Attica").  On May 3, 2019, Plaintiff, with leave of the court, filed an amended complaint (Dkt. 17 at 1-23) ("Amended Complaint"), asserting three claims against Defendants, all employees of DOCCS, including a First Amendment retaliation claim pertaining to the termination of Plaintiff's prison employment position allegedly for filing complaints about lack of access to the law library, Amended Complaint at 3-8 ("First Claim"), a First Amendment retaliation claim asserting Plaintiff was transferred from Attica to another correctional facility to retaliate against Plaintiff for filing prison grievances, *id*. at 8-15 ("Second Claim"), and an Eighth Amendment claim based on being underfed for four days, *id*. at 15-18 ("Third Claim").  In an Order filed July 15, 2019 (Dkt. 18), all claims were dismissed except for the First Claim which is asserted against Defendants DOCCS's Deputy Commissioner Stephen Maher ("Maher"), Law Library Coordinator Barbara Ost ("Ost"), Deputy Superintendent Joey Clinton ("Clinton"),

Superintendent Joseph H. Noeth ("Noeth"), Deputy Superintendent R. Coveny ("Coveny"), Program Committee Chairman Blackburn ("Blackburn"), and Law Library Supervisor Brian Hembrook ("Hembrook") ("Defendants").

On October 15, 2019, Defendants Blackburn, Clinton, Coveny, Maher, Noeth, and Ost filed the instant motion (Dkt. 26) ("Defendants' motion"), seeking pursuant to Fed.R.Civ.P. 12(b)(6) dismissal of the First Claim as against all Defendants except Hembrook for failure to state a claim, attaching the Memorandum of Law in Support of Defendants' Partial Motion to Dismiss (Dkt. 26-1) ("Defendants' Memorandum").  On November 12, 2019, Plaintiff filed the Memorandum of Law in Opposition to Defendant's Partial Motion to Dismiss (Dkt. 28) ("Plaintiff's Response").  On November 19, 2019, Defendants filed an Amended Notice of Motion to dismiss (Dkt. 29), that is essentially identical to the original Notice of Motion, but adding Hembrook as a moving Defendant.[2] In further support of partial dismissal, Defendants filed on November 20, 2019, the Declaration of Assistant Attorney General Denetra D. Roberts (Dkt. 31 at 1) ("Roberts Declaration"), attaching exhibits A and B (Defendants' Exh(s). __") (Dkt. 31 at, respectively, 2-7, and 8-11), and the Memorandum of Law in Further Support of Defendants' Partial Motion to Dismiss (Dkt. 31 at 12-17) ("Defendants' Reply").  On January 16, 2020, Plaintiff filed the Reply Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss (Dkt. 35) ("Plaintiff's Sur-Reply").  Oral argument was deemed unnecessary.

---

[2] Defendants do not proffer any argument in support of dismissing the Amended Complaint as against Hembrook.

Based on the following, Defendants' Motion should be GRANTED with the First Claim DISMISSED as against Defendants Blackburn, Clinton, Coveny, Hembrook, Maher, Noeth, and Ost.

## **FACTS**[3]

At all times relevant to the instant motion, Plaintiff Neb Morrow, III ("Plaintiff"), in the care and custody of New York Department of Corrections and Community Supervision ("DOCCS"), was incarcerated at Attica Correctional Facility in Attica, New York ("Attica"). Plaintiff alleges that on November 14, 2016, Defendant Blackburn ("Blackburn"), as Attica's Program Committee Chairman, interviewed Plaintiff for a paralegal law clerk position in Attica's law library ("library law clerk"), advising Plaintiff was selected for the position pending approval by the "library's officer." Amended Complaint at 3. Plaintiff, however, was never further notified he had been assigned the paralegal position, nor was Plaintiff relocated to the correctional facility's block where library clerks were housed, but remained in Attica's C-block, where inmates who were not assigned to inmate positions were housed. *Id*. On December 5 and 8, 2016, Plaintiff wrote complaints to Defendant Brian Hembrook ("Hembrook"), Attica's law library supervisor, as well as Defendant Deputy Superintendent Joey Clinton ("Clinton"), the law library administrator, that Plaintiff was being denied access to the law library. *Id*. Plaintiff received no answers to his written complaints, but on December 14, 2016, Plaintiff told Blackburn that Plaintiff had not been informed he was given the library law clerk assignment and remained housed in C-Block, which confused Blackburn. *Id*.

---

[3] Taken from the pleadings and motion papers filed in this action.

Blackburn spoke to Hembrook about Plaintiff's assignment, and then informed Plaintiff

he was "fired" from the library law clerk position. *Id*. at 4. When Plaintiff responded by

advising Blackburn that Plaintiff had never commenced working in the position and

remained housed in Attica's unassigned C-block, and had not even attended the law

library, Blackburn appeared confused and then realized the firing was not related to

Plaintiff's job performance. *Id*. at 3-4. According to Plaintiff, Blackburn again spoke to

Hembrook in the presence of Plaintiff who advised Hembrook terminated Plaintiff from

the library law clerk position for "security reasons." *Id*. at 4. When Plaintiff inquired

what specific "security reasons" justified his termination, Blackburn responded no

particulars were given, advising Plaintiff that challenging the unspecified "security

concerns" in court would be futile, and then dismissed Plaintiff from the Program

Committee. *Id*.

Plaintiff filed an inmate grievance challenging the termination from the library law

clerk position which Plaintiff maintained was intended as retaliation for Plaintiff's

previous complaints made about prison conditions, specifically, lack of access to the law

library. Defendant Deputy Superintendent R. Coveny ("Coveny") denied the inmate

grievance. *Id*. at 5.

Plaintiff filed grievances complaining about being removed from the library law

clerks position, but the grievances were denied by Defendants Clinton, Coveny,

Hembrook, and Superintendent Joseph H. Noeth ("Noeth"). *Id*. at 5-6. Plaintiff also

filed an appeal with Defendant Law Library Coordinator Barbara Ost ("Ost"), requesting

Ost take remedial action and reinstate Plaintiff in the law library clerk position, but Ost

never responded. *Id*. at 6-7. Plaintiff further maintains Defendant DOCCS's Deputy

Commissioner Stephen Maher ("Maher") was ordered by Governor Andrew Cuomo ("Cuomo") and DOCCS Commissioner Anthony Annucci ("Annucci"), to investigate Plaintiff's termination from the law library clerk position, but that Maher failed to act as directed. *Id*. at 7-8. According to Plaintiff, upon being transferred to Coxsackie Correctional Facility ("Coxsackie") on December 15, 2017, Plaintiff was assigned to Coxsackie's library law clerk position. *Id*. at 8. When Plaintiff inquired of Coxsackie's program committee chair whether there were any security concerns listed in Plaintiff's program file, that would prevent Plaintiff from occupying the position, he was told there were none, which Plaintiff maintains establishes the falsity that his termination from the library law clerk position at Attica was for security concerns. *Id*. As alleged in the Amended Complaint, Defendants Blackburn, Coveny, Maher, Noeth and Ost were not aware of the rescission of the library law clerk assignment until after it occurred. Amended Complaint, *passim*.


## DISCUSSION

Defendants move pursuant to Rule 12(b)(6), to dismiss the First Claim alleging retaliation for failing to state a claim for which relief can be granted with regard to six of the seven remaining Defendants, including Defendants Blackburn, Clinton, Coveny, Maher, Noeth and Ost. In support of their motion, Defendants maintain that Plaintiff has failed to allege sufficient personal involvement in the asserted constitutional violations by Blackburn, Coveny, Noeth, Ost, and Clinton, Defendants' Memorandum at 2-6, and that Plaintiff's allegations of retaliatory conduct against Blackburn, Coveny, Noeth, Maher, and Ost fail to assert any adverse consequences attributable to his termination

and, thus are insufficient to support a constitutional violation.  *Id*. at 7-9.  In opposing

dismissal, Plaintiff argues that Blackburn, as the Program Committee chairman, should

be considered to be responsible for making the final determination as to whether

Plaintiff would receive the library law clerk assignment at Attica, Plaintiff's Response at

3, despite Plaintiff advising Defendants Clinton, Coveny and Noeth that he was

terminated from the library law clerk position, each of these Defendants either failed to

investigate or did investigate yet failed to take steps to reverse his termination, *id*. at 4-

7, Defendant Ost failed to acknowledge Plaintiff's complaints or to take any remedial

action regarding the complaints, *id*. at 7-8, and Defendant Maher, despite being

responsible for investigating allegations of abuse and corruption within DOCCS, failed

to investigate and take any action, which should have included referring the matter to

Ost and Annucci.  *Id*. at 8-9.  Plaintiff further maintains the Amended Complaint alleges

the requisite adverse consequences attributable to the asserted retaliatory termination.

*Id*. at 10-12.  In further support of dismissal, Defendants argue Plaintiff admits

Blackburn did not make the decision to terminate Plaintiff as the library law clerk,

Defendants' Reply at 2-3, that Defendants Clinton, Coveny, and Noeth were not aware

of Plaintiff's termination for the library law clerk position until after it occurred such that

they were not personally involved in the decision to terminate Plaintiff, *id*. at 3, the

failure of Defendants Noeth and Ost to respond to Plaintiff's complaints regarding his

termination did not constitute retaliation, *id*., Plaintiff's reliance on DOCCS Directive

4483 ("Directive 4483"), for support of Plaintiff's claims is inapposite because Directive

4483 pertains only to access to and use of law libraries or law library services, and not

to inmate work assignments, *id*., nothing supports Plaintiff's assertion that Ost, as

DOCCS law library coordinator, was involved only in the daily management and staffing needs of the various correctional facilities' law libraries, and not the selection of prisoner law clerks, *id*., and Maher's alleged failure to investigate a claim does not satisfy the personal involvement required for a constitutional violation. *Id*. Defendants further maintain that although the loss of a work assignment may be considered an adverse action, Plaintiff fails to allege Defendants Blackburn, Coveny, Maher, Noeth, and Ost were involved in the decision terminating Plaintiff from the desired library law clerk assignment. *Id*. at 4. In sur-reply, Plaintiff argues the requisite personal involvement of Defendants Clinton, Coveny, Maher, Noeth and Ost is established by such Defendants either responding to Plaintiff's grievances with attempts to defend or explain the alleged constitutional violations, Plaintiff's Sur-Reply at 1, or failing to take actions to remedy the violations, *id*. at 1-4, Defendant Blackburn willfully participated in the "ruse" of explaining Plaintiff was fired from the library law clerk position for security concerns despite knowing there were no such concerns, *id*. at 4-5, and Directive 4483 can, broadly construed, pertain to inmate work assignments. *Id*. at 5.

A complaint, to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a

claim to relief that is plausible on its face"). The complaint's factual allegations "must be enough to raise above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570. *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (reviewing motion to dismiss under 12(b)(6), "accepting as true the factual allegations in the complaint and drawing all references in the plaintiff's favor").

The "plausibility standard" applicable to a Rule 12(b)(6) motion to dismiss "is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 544 (2007), and quoting *Iqbal*, 556 U.S. at 678). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Unless the plaintiff pleads "enough facts to state a claim that is plausible on its face" so as to "nudge[ ] their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

## 2.    42 U.S.C. § 1983

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 ("§ 1983"), which permits imposing civil liability upon persons who, acting under color of state law, deprive an

individual of rights, privileges, or immunities secured by the Constitution and laws of the

United States. *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir.

2004) (quoting 42 U.S.C. § 1983). Section 1983, however, "'is not itself a source of

substantive rights.'" *Id*. (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere

conferred' ...." *Id*. The elements of a § 1983 claim include (1) the deprivation of a

federal constitutional or statutory right, and (2) by a person acting under color of state

law. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S.

635, 640 (1980)). Thus, "[t]he first step in any such claim is to identify the specific

constitutional right allegedly infringed." *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 394

(1989); and *Baker*, 443 U.S. at 140). In the instant case, Plaintiff's claim alleging his

termination from the library law clerk position was intended as retaliation by Defendants

for filing inmate grievances complaining about prison conditions at Attica asserts a

violation of Plaintiff's First Amendment right to petition for the redress of grievances.

### A. First Amendment Retaliation

To state a valid First Amendment retaliation claim, a plaintiff must allege he

engaged in conduct protected by the First Amendment, an adverse action by the

defendant, and a causal connection between the protected activity and the adverse

action.

"To establish a First Amendment retaliation claim, a plaintiff must show '(1) that

the speech or conduct at issue was protected, (2) that the defendant took adverse

action  against the plaintiff, and (3) that there was a causal connection between the

protected speech and the adverse action.'" *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir.

2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).  The Second

Circuit has imposed a heightened standard for § 1983 First Amendment retaliation

claims in the prison context by requiring that district courts "approach prisoner retaliation

claims with skepticism and particular care, because virtually any adverse action taken

against a prisoner by a prison official – even those otherwise not rising to the level of a

constitutional violation – can be characterized as a constitutionally proscribed retaliatory

act," therefore requiring such claims be "supported by specific and detailed factual

allegations," that are not stated "in wholly conclusory terms."  *Dolan v. Connolly*, 794

F.3d 290, 295 (2d Cir. 2015) (citations omitted).  In the instant case, Plaintiff has not

satisfied this heightened standard because Plaintiff has failed to plausibly plead he was

subjected to an adverse action.

It is settled "that the filing of prison grievances is a constitutionally protected

activity" *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003).  This is true in the instant

case despite the fact that Plaintiff's complaints to Defendants Hembrook and Clinton,

respectively on December 5 and 8, 2016, complaining about lack of access to Attica's

law library, were made in the form of letters rather than formal inmate grievances.  *See*

*Mazyck v. Keller*, __ F.Supp.3d __, 2021 WL 1201224, at * 8 (W.D.N.Y. Mar. 31, 2021)

("'An inmate's informal complaints or requests as well as formal grievances constitute

protected activity under the First Amendment.'") (quoting *Smith v. Barone*, 2021 WL

917118, at *4 (D.Conn. Mar. 10, 2020)).

With regard to the second element requiring an adverse action, in the context of

a First Amendment retaliation claim, "[a]n adverse action is defined as retaliatory

conduct that would deter a similarly situated individual of ordinary firmness from

exercising his or her constitutional rights." *Brandon*, 938 F.3d at 40.  Otherwise, the asserted retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506 (2002).  Because the test for an adverse action is objective, that an inmate plaintiff continues to file grievances even after the alleged retaliatory action does not necessarily mean the defendants' actions were not sufficiently adverse.  *See Brandon*, 938 F.3d at 40 (citing cases).  In the instant case, Plaintiff's allegations were found sufficient in the limited context of initial screening of the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(a).  July 15, 2019 Order (Dkt. 18) ("Screening Order"), at 6.

Relevant to the instant case, the requisite causal nexus between the inmate's participation in the protected activity and the asserted adverse action may be established by the temporal proximity between the two.  *See Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir.2009) ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."). In the instant case, there is no dispute that plaintiff's December 5 and 8, 2016 complaints regarding the denial of access to the law library constituted protected activity.  *See Davis*, 320 F.3d at 352-53; *Mazyck*, 2021 WL 1201224, at * 8.  Nor is there any dispute that Plaintiff's asserted removal from consideration for the library law clerk position on December 14, 2016, occurred shortly after Plaintiff sent the letters to Hembrook and Clinton on December 5, and 8, 2016, complaining about access to the law library, such that the short time frame could support an inference that the action was in retaliation for sending the complaint letters.  *See Espinal,* 558 F.3d at 129.

Nevertheless, the asserted adverse action, *i.e.*, the rescinding of the offer to assign Plaintiff to the library law clerk position does not state an adverse action.  In particular, the Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights."  *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004) (quotation omitted).  This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights.  *Id.*

Although an inmate has no constitutionally protected right to a specific prison job, *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987), a job reassignment or termination can under certain circumstances constitute adverse action necessary to support a claim of retaliation.  *Id.* ("[A] claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights."); *Baker v. Zlochowon,* 741 F.Supp. 436, 439 (S.D.N.Y.1990) ("a claim for relief can be stated under section 1983 for job reassignments or terminations which were in retaliation for an inmate's efforts to seek vindication of his legal rights ...").  In this case, however, Plaintiff admits he was never actually awarded the library law clerk position, but only that Blackburn advised Plaintiff was "perfect" for the position, but that Blackburn had to receive approval of Plaintiff's selection for the position from Hembrook.  Amended Complaint at 3.  Plaintiff was never formally offered the position, nor was Plaintiff moved to the cell block where inmates assigned to work in the library were housed.  *Id*.  As such, Plaintiff has failed to plead any facts which, if true, would establish Plaintiff was negatively impacted by Defendants' actions in rescinding the putative library law clerk job assignment before Plaintiff ever commenced working

pursuant to the assignment.  *See Vega v. Lareau*, 2010 WL 2682307, at * 8 (N.D.N.Y. Mar. 16, 2010) ("This court doubts that plaintiff could establish that periodically keeping him from attending a job, with no monetary or other apparent penalty, constitutes the type of 'adverse action' that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights."); *Allah v. Walker*, 2005 WL 927619, at * 4 (N.D.N.Y. Apr. 20, 2005) ("Even if Defendants made the [prison job] reassignment for an improper purpose, Plaintiff would, at a minimum, have to show that the reassignment itself negatively impacted him in some way.").  Similarly, in the instant case, Plaintiff fails to plead any facts showing how the rescission of the library law clerk position negatively impacted Plaintiff, as is evident from Plaintiff's argument in opposition to dismissal that "the adverse consequence was termination from a law clerk's assignment," Plaintiff's Response at 11, an assertion squarely at odds with Plaintiff's allegations that he was never actually given the library law clerk assignment.  Amended Complaint at 3.

Nor does the fact that Plaintiff's First Amendment retaliation claim survived the court's initial screening pursuant to 28 U.S.C. § 1915(a)(2)(E) and § 1915A(a) change this determination as Plaintiff argues.  Plaintiff's Response at 1.  Allowing a claim to proceed after initially screening the complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A does not preclude a later dismissal of the complaint under Rule 12(b)(6) for failing to state a claim.  *Forbes v. Doe*, 2021 WL 810020, at *1 n. 1 (W.D.N.Y. Mar. 3, 2021) (citing cases).

Defendants' Motion thus should be GRANTED and the Amended Complaint DISMISSED against all remaining Defendants based on Plaintiff's failure to allege the rescission of the library law clerk assignment constituted an adverse action.

### B.    Personal Involvement

Alternatively, the court addresses Defendants' argument that the Amended

Complaint should be dismissed as against Defendants Blackburn, Clinton, Coveny,

Maher, Noeth, and Ost for lack of personal involvement.  It is basic that liability under

§ 1983 requires a defendant's personal involvement in the alleged deprivation of a

federal right.  *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) ("To establish a

section 1983 claim, 'a plaintiff must establish a given defendant's personal involvement

in the claimed violation in order to hold that defendant liable in his individual capacity.'"

(quoting *Patterson*, 375 F.3d at 229)); *Spavone v. New York State Dept. of Correctional*

*Services*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873

(2d Cir. 1995) ("*Colon*")).  A supervisor's liability in a § 1983 action "cannot rest on

respondeat superior," *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citing

cases); rather, to establish liability under § 1983, the Plaintiff must establish a defendant

was personally involved in the claimed violation to hold such defendant liable.  *Warren*

*v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016).

Further, "mere 'linkage in the prison chain of command' is insufficient to implicate

a state commissioner of corrections or a prison superintendent in a § 1983 claim."

*Richardson*, 347 F.3d at 435 (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.

1985), and citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting a § 1983

defendant may not be held liable for constitutional violations merely because he holds a

position of high authority)).  Instead, the requisite personal involvement can be shown in

one or more of the following ways, first set forth in *Colon*, to wit: (1) actual direct

participation in the constitutional violation, (2) failure to remedy a wrong after being

15

informed through a report or appeal, (3) creation of a policy or custom that sanctioned

conduct amounting to a constitutional violation, or allowing such a policy or custom to

continue, (4) grossly negligent supervision of subordinates who committed a violation,

or (5) failure to act on information indicating that unconstitutional acts were occurring."

*Id.* (quoting *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003)) ("*Colon* factors").

The mere receipt of letters or grievances, without more, does not amount to personal

involvement.  *See Alvarado v. Westchester County*, 22 F.Supp.3d 208, 215 (S.D.N.Y.

2014) (supervisor "defendant's mere receipt of a letter or grievance, without personally

investigating or acting thereon, is insufficient to establish personal involvement.").  Nor

does the forwarding of correspondence to another party constitute the requisite

personal involvement.  *See DeLee v. Hannigan*, 729 Fed.Appx. 25, 31 (2d Cir. 2018)

(no personal involvement where defendant supervisor was alleged only to have

forwarded correspondence from the plaintiff to another party (citing *Sealy v. Giltner*, 116

F.3d 47, 51 (2d Cir. 1997)).  In the instant case, Defendants Blackburn, Clinton,

Coveny, Maher, Noeth, and Ost should be dismissed for lack of personal involvement.

　　　With regard to Plaintiff's assertion that his December 5 and 8, 2016 letters to,

respectively, Defendants Hembrook and Clinton were the protected activity that led to

the rescission of the offer to assign Plaintiff to the library law clerk position, the

allegations of the Amended Complaint assert that Defendants Blackburn, Coveny,

Maher, Noeth and Ost were not aware of the rescission of the library law clerk

assignment until after it occurred.  Amended Complaint, *passim*.  As such, Defendants

Blackburn, Coveny, Maher, Noeth, and Ost cannot plausibly have been personally

involved in the decision to rescind the offer. The matter should thus be dismissed against such Defendants for lack of personal involvement in the alleged retaliation.

As for Defendant Clinton, although Clinton was the intended recipient of Plaintiff's December 8, 2016 letter complaining about access to the law library, such that Clinton, Attica's law library administrator, was aware of the complaint prior to the rescission of the library law clerk position offer on December 14, 2016, Plaintiff nevertheless fails to allege Clinton had any authority to offer or rescind positions as the library law clerk; rather, as discussed, Discussion, *supra*, at 13, Plaintiff alleges that Hembrook was the DOCCS official in charge of approving library law clerk assignments. Amended Complaint at 3-4. Accordingly, Plaintiff has failed to allege Clinton's personal involvement in the asserted retaliatory act.

Insofar as the Amended Complaint can be liberally construed as asserting personal involvement based on Defendants Blackburn, Clinton, Coveny, Maher, Noeth, and Ost's failure to remedy the asserted wrongful rescission of the library law clerk assignment, such claim is based on the second *Colon* factor for personal involvement, *i.e.*, that a defendant, upon learning of an asserted constitutional violation, either through a report or appeal, failed to remedy the wrong. *Colon*, 58 F.3d at 873. Personal involvement under the second factor, however, depends on whether the supervisory official, upon being advised about the asserted retaliatory act, personally investigated or decided the matter. *See Lloyd v. City of New York*, 43 F.Supp.3d 254, 267 (S.D.N.Y. 2014) (citing *Johnson v. Wright*, 234 F.Supp.2d 352, 363 (S.D.NY. 2002). Here, Plaintiff alleges Defendants Clinton, Coveny, and Noeth admitted to investigating

Plaintiff's retaliation claim, yet by failing to take remedial action, became participants in the retaliation.

In particular, on December 16, 2016 and January 5, 2017, Plaintiff filed complaints of the alleged retaliatory firing with Defendant Clinton, Amended Complaint, Exhs. 5 and 6 (Dkt. 17 at 37-39), who, on January 17, 2017, responded that "[r]ecords indicate that you were removed from the assignment for security reasons."  *Id*., Exh. 7 (Dkt. 17 at 40).  Clinton's general response, however, does not specify that Clinton personally investigated Plaintiff's complaints.  On March 12, 2017, Plaintiff wrote a similar complaint to Defendant Noeth regarding the library law clerk assignment, *id.* Exh. 8 (Dkt. 17 at 41-43).  A plain review of the March 12, 2017 letter attached to the Amended Complaint, Dkt. 17 at 41-43, however, establishes Plaintiff was complaining about both denial of special access to the law library as well as the rescission of the library law clerk assignment, but Plaintiff does not attribute the assignment's rescission to his December 5 and 8, 2016 letters complaining to Hembrook and Clinton about lack of access to the law library.  Accordingly, Defendants Clinton's March 24, 2017, response to the complaint is limited to explaining Noeth had forwarded the matter to Clinton for investigation, that Clinton spoke with Hembrook who advised Plaintiff was denied special access to the law library because Plaintiff failed to submit any court documents showing Plaintiff had a pending court deadline supporting special access, and does not address the rescission of the library law clerk assignment.  *Id*., Exh. 9 (Dkt. 17 at 44).  Clinton cannot be faulted for failing, in response to Plaintiff's letter, to remedy the alleged retaliatory assignment rescission because Plaintiff's March 12, 2017 letter does not assert such a wrong.  Upon receiving Clinton's letter of March 24, 2017,

Plaintiff again wrote to Noeth on March 25, 2017, this time including his retaliatory assignment rescission allegation, *id*., Exh. 10 (Dkt. 17 at 45-49), which complaint Noeth, on March 28, 2017, advised was being forwarded to Defendant Clinton "for whatever action he deems appropriate." *Id*., Exh. 12 (Dkt. 17 at 53). On April 14, 2017, Defendant Clinton advised Plaintiff he had investigated Plaintiff's complaint regarding law library access, *id*., Exh. 13 (Dkt. 17 at 54), but does not address the asserted retaliatory assignment rescission. Again, however, Plaintiff does not allege Clinton was authorized to arrange for Plaintiff to be assigned to the library law clerk position. Accordingly, neither Defendant Clinton nor Noeth was personally involved in investigating Plaintiff's asserted unlawful rescission of the library law clerk assignment.

With regard to Defendant Coveny, the record establishes that on February 9, 2017, Coveny denied Plaintiff's inmate grievance filed December 19, 2016, complaining about Plaintiff's removal from the library law clerk assignment for false security concerns. Amended Complaint Exhs. 2 and 3 (Dkt. 17 at 31-33). Coveny wrote "[t]he investigation into this matter" showed Plaintiff was assigned from November 14 to December 11, 2016 to the law library as a paralegal assistant, rather than a law clerk position,[4] and that Plaintiff was paid for the job assignment from November 23 to December 15, 2016. Not only is it not clear from the record that the investigation into Plaintiff's grievance was thorough given the discrepancy in job title and Plaintiff's insistence he never commenced working in the law library, but Coveny's response also does not establish Coveny personally investigated the matter or simply reported the

---

[4] DOCCS Directive 4483[F] pertains to "inmate staffing" and lists the various "job titles for inmate Law Library workers may include Paralegal Assistant, Administrative Clerk, Legal General Clerk, Clerk Typist, and Porter."

investigation's findings.[5]  Accordingly, the Amended Complaint fails to state a claim against Coveny for lack of personal involvement in the matter.

Further, Plaintiff admits that Defendant Ost refused to acknowledge Plaintiff's complaint, Plaintiff's Response at 7, and that Defendant Maher has also failed to become involved in the matter.  *Id*. at 8-9.  Accordingly, the Amended Complaint fails to state a claim against Defendants Ost and Maher for failing to remedy the perceived wrongful rescission of the library law clerk assignment.  Moreover, Plaintiff's allegation that Defendant Blackburn was required to obtain approval from Defendant Hembrook prior to officially assigning Plaintiff to the library law clerk position, Amended Complaint at 3, establishes Blackburn was without any authority to remedy the asserted wrong with regard to Blackburn.

Furthermore, Plaintiff's reliance on DOCCS Directive 4483[M][6] for the proposition that Defendants Noeth and Ost violated Plaintiff's First Amendment constitutional rights by delegating a response to Plaintiff's complaints to a subordinate rather than personally addressing Plaintiff's complaints is inapposite.  In particular, a plain reading of DOCCS Directive 4483[M] establishes it provides only that inmate complaints regarding access to and use of a correctional facility's law library may be directed "to

---

[5] Furthermore, without agreeing that DOCCS Directive 4483(F) is germane to the merits of Plaintiff's First Amendment retaliation claim, the court notes a violation of a DOCCS Directive, a state procedure, will not support a First Amendment claim.  *See Mingo v. Fischer*, 2014 WL 2918599, at * 6 (N.D.N.Y. June 26, 2014) (dismissing for failure to state a claim inmate plaintiff's First Amendment claim based on claim that unidentified correctional facility staff member violated a DOCCS Directive by disparaging the inmate plaintiff's religious beliefs).

[6] Because a copy of DOCCS Directive 4483 was incorporated by reference into the Amended Complaint, Amended Complaint at 6-7 and Exhs. 8 and 10, the court may consider it in analyzing Defendants' motion to dismiss pursuant to Rule 12(b)(6).  *Kalyanaram v. American Ass'n of University Professors at New York Institute of Technology*, 742 F.3d 42, 44 n. 1 (2d Cir. 2014) (in ruling on Rule 12(b)(6) motion to dismiss, "a court may consider the complaint as well as any written instrument attached as an exhibit or any statements or documents incorporated in it by reference.") (citing cases).

the Law Library Supervisory, the Law Library Administrator, the Superintendent, and the Department's Law Library Coordinator in that order."  DOCCS Directive 4483[M]. DOCCS Directive 4483, however, is silent as to who is responsible for personally investigating and resolving complaints, and contains no prohibition against forwarding a complaint to a subordinate for investigation and resolution.  Nor does DOCCS Directive 4483 provide any authority for the remedial action Plaintiff maintains he was denied by Defendants who failed to remedy the wrong, *i.e.,* the rescission of the library law clerk assignment.  Accordingly, DOCCS Directive 4483[M] is irrelevant to Plaintiff's retaliation claim.

**3.    Dismissal Without Prejudice**

Dismissal of a *pro se* plaintiff's claims for failure to state a claim is generally without prejudice and with leave to replead except where amendment would be futile, dismissal may be with prejudice and without leave to amend.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citing *Branum v. Clark*, 927 F.2d 698. 705 (2d Cir. 1991), and *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  In the instant case, if Plaintiff can allege facts showing how the rescission of the library law clerk position negatively impacted Plaintiff, Plaintiff may be able to assert a valid claim for retaliation based on the December 5 and 8, 2016 letters Plaintiff wrote to Defendants Hembrook and Clinton complaining of the lack of adequate access to the law library, which was followed approximately one week later by the rescission of the library law clerk assignment. Accordingly, the dismissal of the action should be without prejudice and with leave to further replead.

## CONCLUSION

Based on the foregoing, Defendants' motion (Dkt. 15) should be GRANTED, and the First Claim DISMISSED without prejudice against all Defendants.  Should Plaintiff fail to file a further amended complaint if permitted by Judge Sinatra, then the action should be DISMISSED with prejudice and the Clerk of Court directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       May 24th, 2021
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**
**extension of such time waives the right to appeal the District Court's Order.**
*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    May 24th, 2021
          Buffalo, New York