UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NEB MORROW, III,

                       Plaintiff,
        v.

GOV. ANDREW CUOMO,
COMMISSIONER ANTHONY ANNUCCI,
STEPHEN MAHER, DOCCS's Deputy Commissioner,
BARBARA OST, Law Library Coordinator,
SUPERINTENDENT JOSEPH H. NOETH,
R. COVENY, Deputy Superintendent,
MR. BLACKBURN, Program Committee Chairman,
BRIAN HEMBROOK, Law Library Supervisor,
JOEY CLINTON, Deputy Superintendent,
COUNSELOR L. ELEY,
JANE/JOHN DOE, civilian cook in charge of
  supervising the making of transit food trays and
  meal bags for Auburn C.F. and Downstate C.F.,
JANE/JOHN DOE, Nutritionist for DOCCS's Office of
  Nutritional Services,
DANIEL MARTUSCELLO, DOCCS's Deputy
  Commissioner or Administration, and
C.O. HALL, of Downstate C.F.,

                       Defendants.
_____

REPORT
and
RECOMMENDATION

17-CV-1109Si(F)

APPEARANCES:        NEB MORROW, III, *Pro se*
                             10-A-6112
                             Sing Sing Correctional Facility
                             354 Hunter Street
                             Ossining, New York  10562-5498

                             LETITIA A. JAMES
                             ATTORNEY GENERAL, STATE OF NEW YORK
                             Attorney for Defendants
                             DENETRA D. ROBERTS
                             Assistant Attorney General, of Counsel
                             Main Place Tower
                             Suite 300A
                             350 Main Street
                             Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Honorable Lawrence J. Vilardo[1] on November 20, 2019, for all pretrial matters including preparation of a report and recommendation on dispositive motions. The matter is presently before the court on Defendants' motion to dismiss the Second Amended Complaint for failure to state a claim (Dkt. 54), filed June 9, 2022.

## BACKGROUND

Plaintiff Jason Armstrong ("Plaintiff"), an inmate in the care and custody of New York Department of Corrections and Community Supervision ("DOCCS"), and proceeding *pro se*, commenced this civil rights action on November 1, 2017, alleging claims against Defendants, including New York Governor Andrew Cuomo and employees of New York Department of Corrections and Community Supervision ("DOCCS"), pertaining to incidents occurring while Plaintiff was housed at Attica Correctional Facility ("Attica" or "the prison"). On May 3, 2019, Plaintiff, with leave of the court, filed an amended complaint (Dkt. 17 at 1-23) ("First Amended Complaint" of "FAC"), asserting three claims against Defendants, all employees of DOCCS. In an Order filed July 15, 2019 (Dkt. 18), all claims were dismissed except for a First Amendment retaliation claim based on the termination of Plaintiff's prison employment position for filing complaints regarding a lack of access to the law library, asserted against Defendants DOCCS's Deputy Commissioner Stephen Maher ("Maher"), Law

---

[1] By Text Order entered January 6, 2020 (Dkt. 34), the matter was reassigned to Honorable John L. Sinatra, Jr.

Library Coordinator Barbara Ost ("Ost"), Deputy Superintendent Joey Clinton ("Clinton"), Superintendent Joseph H. Noeth ("Noeth"), Deputy Superintendent R. Coveny ("Coveny"), Program Committee Chairman Blackburn ("Blackburn"), and Law Library Supervisor Brian Hembrook ("Hembrook") ("Defendants"). In a motion filed on October 15, 2019, Defendants Blackburn, Clinton, Coveny, Maher, Noeth, and Ost moved to dismiss the FAC (Dkt. 26) as against all Defendants except Hembrook for failure to state a claim, and on November 19, 2019, Hembrook joined in the motion (Dkt. 29).

In a Report and Recommendation issued May 24, 2021 (Dkt. 36) ("R&R"), the undersigned recommended the sole remaining claim alleging First Amendment retaliation based on the termination of Plaintiff's prison employment position for complaining about a lack of law library access be dismissed because Plaintiff failed to allege the requisite adverse action, R&R at 10-14, and, alternatively, the claim should be dismissed as against Defendants Maher, Ost, Clinton, Noeth, Coveny, and Blackburn for lack of the requisite personal involvement, *id*. at 15-21, but that dismissal should, in light of Plaintiff's *pro se* status, be without prejudice and with leave to replead. *Id*. at 21. In a Decision and Order filed December 28, 2021 (Dkt. 46) ("D&O"), District Judge John L. Sinatra, Jr., adopted the R&R's recommendation that the claim be dismissed as against all Defendants based on Plaintiff's failure to allege he suffered an adverse action as required to state a First Amendment retaliation claim, D&O at 3, and granted Plaintiff leave to amend. *Id*. at 4. Accordingly, on February 18, 2022, Plaintiff filed the Second Amended Complaint (Dkt. 49) ("SAC"), alleging against Defendants Blackburn, Clinton, Coveny, Hembrook, Noeth and Ost ("Defendants"), only a First Amendment retaliation claim based on the termination of Plaintiff's prison employment

3

position as a paralegal clerk in the prison's law library which Plaintiff attributes to Plaintiff's filing of grievances regarding a lack of access to Attica's law library.[2]  On February 22, 2022, Petitioner filed a volume of exhibits to the SAC (Dkt. 50) ("Exh(s). __").

On June 9, 2022, Defendants filed the instant motion to dismiss the SAC (Dkt. 54) ("Defendants' Motion"), attaching the Memorandum of Law in Support of Defendants' Motion to Dismiss (Dkt. 54-1) ("Defendants' Memorandum").  On July 18, 2022, Plaintiff filed the Memorandum of Law in Support of Plaintiff's Opposition to Motion to Dismiss (Dkt. 56) ("Plaintiff's Response").  In further support of dismissal of the SAC, Defendants filed on July 28, 2022, the Reply Declaration of [New York State Assistant Attorney General][3] Denetra D. Roberts (Dkt. 57) ("Roberts's Declaration").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED.

## **FACTS**[4]

At all times relevant to the instant motion, Plaintiff Neb Morrow, III ("Plaintiff"), in the care and custody of New York Department of Corrections and Community Supervision ("DOCCS"), was incarcerated at Attica Correctional Facility in Attica, New York ("Attica").  Plaintiff alleges that on November 14, 2016, Defendant Blackburn ("Blackburn"), as Attica's Program Committee Chairman, interviewed Plaintiff for a paralegal law clerk position in Attica's law library ("law library clerk"), telling Plaintiff he

---

[2] The SAC does not name Maher as a Defendant.
[3] Unless otherwise indicated, bracketed material has been added.
[4] Taken from the SAC.  The court notes the factual allegations of the SAC are essentially identical to those alleged in the FAC.

4

was "perfect for the job of paralegal law clerk," and assigning Plaintiff to the law library clerk position with the caveat that Blackburn "had to check with the library's officer first." SAC ¶ 1.  Although Plaintiff alleges he began receiving pay as the law library clerk beginning November 23, 2016, SAC ¶ 2, Plaintiff "was not informed that he had actually been approved and given the assignment, nor was Plaintiff relocated to the [prison housing] block wherein law library clerks were housed, but remained housed in the unassigned block, which at that time in Attica was C-block."  SAC ¶ 3.  On December 5 and 8, 2016, Plaintiff wrote complaints to Defendants Brian Hembrook ("Hembrook"), Attica's law library supervisor, and to the law library administrator Defendant Deputy Superintendent Joey Clinton ("Clinton"), complaining about lack of access to the law library.  *Id*. ¶ 4.  Hembrook did not answer the written complaints, but on December 14, 2016, Blackburn informed Plaintiff that Plaintiff had been fired from the law library clerk position, and inquired of Plaintiff why the assignment did not work out.  *Id*. ¶ 5.  Plaintiff responded that Plaintiff had never commenced working in the position and remained housed in Attica's unassigned C-block, and had not even attended the law library, and Blackburn, upon realizing the firing was not work-related, appeared confused.  *Id*. ¶¶ 6-8.  Blackburn then, in the presence of Plaintiff, spoke to Hembrook who advised that Hembrook terminated Plaintiff from the law library clerk position for "security reasons." *Id*. ¶¶ 10-11.  Plaintiff inquired what specific "security reasons" justified his termination so that Plaintiff could challenge the reasons, but Blackburn responded only that the staff was not required to provide any particular reasons other than that the concerns were matters of security.  *Id*. ¶¶ 12-13.  Plaintiff told Blackburn that Plaintiff intended to

5

challenge the security concerns and Blackburn responded any such challenges would be futile.  *Id*. ¶ 14.

After writing informal complaints about the lack of access to the law library to Hembrook on December 5, 2016, and to Clinton on December 8, 2016, Plaintiff filed inmate grievances challenging the termination from the law library clerk position which Plaintiff maintains was intended as retaliation for Plaintiff's previous complaints made about prison conditions, specifically, lack of access to the law library, as well as other inmate grievances complaining about being removed from the law library clerk position, but all of Plaintiff's grievances were denied both by the Inmate Grievance Resolution Committee, as well as on appeal to the correctional facility superintendent and then to the Central Office Review Committee as required by the relevant DOCCS regulations, as well as complaints regarding access to the law library, which were also denied.  *Id*. ¶¶ 15-32.[5]  According to Plaintiff, upon being transferred to Coxsackie Correctional Facility ("Coxsackie") on December 15, 2017, Plaintiff was assigned to Coxsackie's law library clerk position.  *Id*. ¶ 37.  When Plaintiff inquired of Coxsackie's program committee chair whether there were any security concerns listed in Plaintiff's program file that would prevent Plaintiff from occupying the position, he was told there were none which Plaintiff maintains establishes the falsity that his termination from the law library clerk position at Attica was for security concerns.  *Id*. ¶¶ 38.  Plaintiff's job performance as the law library clerk at Coxsackie was "above average."  *Id*. ¶ 39 and Exh. 17.  As alleged in the Amended Complaint, Defendants Blackburn, Coveny, and Ost were not

---

[5] Because Defendants do not deny that Plaintiff has exhausted all administrative remedies relevant to his First Amendment retaliation claim, the facts pertaining to Plaintiff's exhaustion of administrative remedies, which are lengthy and irrelevant to Plaintiff's First Amendment retaliation claim, are not presented here.

aware of the rescission of the law library clerk assignment until after it occurred. Amended Complaint, *passim*.

## DISCUSSION

**1.   Motion to Dismiss**

Defendants move pursuant to Rule 12(b)(6), to dismiss the SAC alleging retaliation for failing to state a claim for which relief can be granted with regard to all Defendants arguing that Plaintiff's allegations of retaliatory conduct are insufficient to support a First Amendment violation because Plaintiff was never actually given the law library clerk position, Defendants' Memorandum at 3-5, and alternatively that Plaintiff fails to allege sufficient personal involvement in the retaliatory conduct by Defendants Blackburn, Coveny, Noeth, Ost and Clinton. *Id*. at 5-9.  In opposing dismissal, Plaintiff argues his claim of retaliation in violation of the First Amendment is supported by factual allegations that Plaintiff's program status was changed from unemployed to "job item No. 633414," Plaintiff began receiving payment for the job on November 23, 2016, and there is no evidence substantiating the security concerns upon which Defendants allegedly relied in terminating Plaintiff from the law library clerk position.  Plaintiff's Response at 5-9.  Plaintiff further argues sufficient personal involvement is alleged with regard to Defendants Blackburn, Clinton, Coveny, Noeth, and Ost insofar as these Defendants conspired to cover-up Hembrook's wrongful conduct in terminating Plaintiff from the law library clerk position.  *Id*. at 10-15.  In further support of dismissal, Defendants point out Plaintiff has failed to allege any additional facts not contained in the FAC so as to plausibly establish he suffered an adverse action and thus adequately plead a First Amendment retaliation claim, Roberts Declaration ¶¶ 3-5, and relies solely

7

on the theory of supervisory liability in attempting to allege the requisite personal involvement of Defendants Blackburn, Clinton, Coveny, Noeth, and Ost. *Id*. ¶¶ 6-7.

A complaint, to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face"). The complaint's factual allegations "must be enough to raise above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570. *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (reviewing motion to dismiss under 12(b)(6), "accepting as true the factual allegations in the complaint and drawing all references in the plaintiff's favor").

The "plausibility standard" applicable to a Rule 12(b)(6) motion to dismiss "is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 544 (2007), and quoting *Iqbal*, 556 U.S. at 678). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that

states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Unless the plaintiff pleads "enough facts to state a claim that is plausible on its face" so as to "nudge[ ] their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

### 2.     42 U.S.C. § 1983

Plaintiff's First Amendment retaliation claim is asserted pursuant to 42 U.S.C. § 1983 ("§ 1983"), which permits imposing civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States. *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). Section 1983, however, "'is not itself a source of substantive rights.'" *Id*. (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred' ...." *Id*. The elements of a § 1983 claim include (1) the deprivation of a federal constitutional or statutory right, and (2) by a person acting under color of state law. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140). In the instant case, Plaintiff's claim alleging his termination from the law library clerk position was intended as retaliation by Defendants for writing informal complaints and filing inmate grievances

complaining about prison conditions at Attica asserts a violation of Plaintiff's First Amendment right to petition for the redress of grievances.

### A. First Amendment Retaliation

To state a valid First Amendment retaliation claim, a plaintiff must allege he engaged in conduct protected by the First Amendment, an adverse action by the defendant, and a causal connection between the protected activity and the adverse action. In particular, "[t]o establish a First Amendment retaliation claim, a plaintiff must show '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). The Second Circuit has imposed a heightened standard for § 1983 First Amendment retaliation claims in the prison context by requiring that district courts "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act," therefore requiring such claims be "supported by specific and detailed factual allegations," that are not stated "in wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citations omitted). In the instant case, Plaintiff has not satisfied this heightened standard because Plaintiff has failed to plausibly plead he was ever formally offered, let alone employed in, the law library clerk position such that Plaintiff could not have been removed from the position so as to be subjected to an adverse action.

It is settled "that the filing of prison grievances is a constitutionally protected activity." *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003). Here, Defendants do not dispute that Plaintiff engaged in filing complaints that constituted protected activities for purposes of First Amendment retaliation. Defendants' Memorandum at 2-5.

With regard to the second element of a First Amendment retaliation claim requiring an adverse action, in the context of a First Amendment retaliation claim, "[a]n adverse action is defined as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Brandon*, 938 F.3d at 40. Otherwise, the asserted retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506 (2002).

In support of Defendants' Motion, Defendants argue that Plaintiff does not, and cannot, allege facts supporting the second element of his retaliation claim because Plaintiff's own factual allegations in the pleadings establish Plaintiff was never formally offered, and thus never actually employed in, the law library clerk position. Defendants' Memorandum at 4-5. In support of this argument, Defendants reference ¶ 1 of the SAC where Plaintiff alleges that although Defendant Blackburn told Plaintiff that Plaintiff was "perfect for the job of paralegal law clerk," and assigned Plaintiff to such position, Blackburn also stated that "he had to check with the library's officer first." *Id*. (citing SAC § 1). Plaintiff also admitted that thereafter, Plaintiff "was not informed that he had actually been approved and given the assignment, nor was Plaintiff relocated to the block wherein law library clerks were housed, but remained housed in the unassigned

11

block, which at that time in Attica was C-Block." *Id*. (citing ¶ 3).  According to Defendants, these allegations establish Plaintiff was never employed as the law library clerk position, or even formally offered the position, rendering it impossible for Plaintiff to be terminated from such position, *id*., and Plaintiff's allegation that he received pay for the law library clerk position can only establish Plaintiff was "unjustly enriched," rather than that Plaintiff was adversely affected.  *Id*. at 5.  In opposition, Plaintiff argues his allegations that his program status was changed from "unemployed" to "job item No. 633414," which Plaintiff maintains is consistent with employment as a law library clerk, and received pay for the position, satisfies the second element of an adverse employment action for purposes of his First Amendment retaliation claim.  Plaintiff's Response at 5-6 (referencing SAC ¶ 2).  Plaintiff further maintains that whether he "was unjustly enriched is not dispositive of the question of whether Plaintiff's removal was accomplished and maintained by a conspiratorial retaliation for his writing complaints against prison conditions." *Id*. at 6.  In further support of dismissal, Defendants argue Plaintiff, in opposing dismissal, merely realleges the same facts alleged in the FAC.  Roberts Declaration ¶¶ 1-5.

Although an inmate has no constitutionally protected right to a specific prison job, *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987), a job reassignment or termination can under certain circumstances constitute adverse action necessary to support a claim of retaliation.  *Id*. ("[A] claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights."); *Baker v. Zlochowon,* 741 F.Supp. 436, 439 (S.D.N.Y.1990) ("a claim for relief can be stated under section 1983 for job reassignments or terminations which

12

were in retaliation for an inmate's efforts to seek vindication of his legal rights ..."). In this case, however, Plaintiff admits he was never actually awarded the law library clerk position, but only that Blackburn advised Plaintiff was "perfect" for the position, yet Blackburn had to receive approval of Plaintiff's selection for the position from Hembrook. SAC ¶ 1. Plaintiff was never formally offered the position, nor was Plaintiff moved to the cell block where inmates assigned to work in the library were housed. *Id*. ¶ 3. Further, in light of these admissions by Plaintiff, Plaintiff's further allegation that his prison program status was changed from unemployed to a number consistent with employment as a law library clerk, as well as that Plaintiff received payment for the job, *id*. ¶ 2, at, most, plausibly support only that a clerical error occurred rather than that Plaintiff was formally hired for the law library position. As such, Plaintiff has failed to plead any facts which, if true, would plausibly establish Plaintiff was negatively impacted by Defendants' actions in rescinding the putative law library clerk job assignment before Plaintiff was ever formally offered the position or commenced working pursuant to the assignment. *See Vega v. Lareau*, 2010 WL 2682307, at * 8 (N.D.N.Y. Mar. 16, 2010) ("This court doubts that plaintiff could establish that periodically keeping him from attending a job, with no monetary or other apparent penalty, constitutes the type of 'adverse action' that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights."); *Allah v. Walker*, 2005 WL 927619, at * 4 (N.D.N.Y. Apr. 20, 2005) ("Even if Defendants made the [prison job] reassignment for an improper purpose, Plaintiff would, at a minimum, have to show that the reassignment itself negatively impacted him in some way."). Simply put, Plaintiff has not pleaded any facts plausibly alleging anything more than that a clerical error occurred in connection with

13

Plaintiff's pursuing employment at Attica for the law library clerk position, much less than that the failure to formally offer Plaintiff the position negatively impacted Plaintiff.

Defendants' Motion thus should be GRANTED and the SAC DISMISSED against all Defendants based on Plaintiff's failure to plausibly allege the asserted rescission of the law library clerk assignment constituted an adverse action.

### B.     Personal Involvement

Alternatively, the court addresses Defendants' argument that the Amended Complaint should be dismissed as against Defendants Blackburn, Clinton, Coveny, Noeth, and Ost for lack of personal involvement.  It is basic that liability under § 1983 requires a defendant's personal involvement in the alleged deprivation of a federal right.  *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) ("To establish a section 1983 claim, 'a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity.'" (quoting *Patterson*, 375 F.3d at 229)); *Spavone v. New York State Dept. of Correctional Services*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("*Colon*")).  In the instant case, Defendants Blackburn, Clinton, Coveny, Maher, Noeth, and Ost should be dismissed for lack of personal involvement.

Insofar as Plaintiff's First Amendment retaliation claim is alleged against any Defendant based on the Defendant being in a supervisory position, a supervisor's liability in a § 1983 action "cannot rest on respondeat superior," *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citing cases); instead, the alleged constitutional violation for a § 1983 claim "must be established against the supervisory official directly." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  *See also Warren v.*

*Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (to establish liability under § 1983, the Plaintiff must establish a defendant was personally involved in the claimed violation to hold such defendant liable).

Further, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson*, 347 F.3d at 435 (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985), and citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting a § 1983 defendant may not be held liable for constitutional violations merely because he holds a position of high authority)). Significantly, the forwarding of correspondence to another party does constitute the requisite personal involvement. *See DeLee v. Hannigan*, 729 Fed.Appx. 25, 31 (2d Cir. 2018) (no personal involvement where defendant supervisor was alleged only to have forwarded correspondence from the plaintiff to another party (citing *Sealy v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)).

With regard to Plaintiff's assertion that his December 5 and 8, 2016 letters to, respectively, Defendants Hembrook and Clinton were the protected activity that led to the failure to offer the law library clerk position to Plaintiff, the allegations of the Amended Complaint assert that Defendants Blackburn, Coveny, Noeth and Ost were not aware that Plaintiff was not offered the law library clerk assignment until after Plaintiff wrote the letters to Hembrook and Clinton, as well as prior to Plaintiff filing inmate grievances. SAC, *passim*. As such, Defendants Blackburn, Coveny, Noeth, and Ost cannot plausibly have been personally involved in any decision not to offer Plaintiff the law library clerk position. Nor is there any allegation that Clinton, the alleged intended recipient of Plaintiff's December 8, 2016 letter complaining about access to the

15

law library, was authorized to offer or rescind and offer of prison employment as the law library clerk; rather, as Plaintiff alleges, SAC ¶ 4, Hembrook was the DOCCS official in charge of approving law library clerk assignments. SAC ¶ 4; Plaintiff's Response at 9.

Defendants' Motion should thus be GRANTED and the matter dismissed against Defendants Blackburn, Clinton, Coveny, Noeth, and Ost for lack of personal involvement in the alleged retaliation.

Furthermore, insofar as Plaintiff alleges for the first time in responding in opposition to Defendants' Motion that Defendants Blackburn, Clinton, Coveny, Hembrook, Noeth, and Ost were personally involved in a *conspiracy* to retaliate against Plaintiff for filing complaints by rescinding the law library clerk position, Plaintiff's Response at 10-15, Plaintiff does not allege a civil rights conspiracy claim pursuant to 42 U.S.C. § 1985(3) ("§ 1985(3)"), in the SAC and even the most liberal construction of the SAC as asserting such claim fails because the SAC is devoid of any plausible allegation of the required "tacit understanding" between and of the Defendants to carry out any prohibited conduct. *See Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) ("A conspiracy [pursuant to § 1985(3)] 'need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct.'" (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (further quotation omitted)). "Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id*. (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)). Significantly, neither the SAC nor Plaintiff's Response even remotely suggests any

unlawful conduct by Defendants was based on a "class-based, invidious discriminatory animus" so as to plausibly establish personal involvement based on a civil rights conspiracy.

Accordingly, the SAC does not state a civil rights conspiracy against any of the Defendants.

### 3. Dismissal Without Prejudice

Although dismissal of a *pro se* plaintiff's claims for failure to state a claim is generally without prejudice and with leave to replead, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Here, the problems with Plaintiff's SAC, as pleaded, are substantive such that further pleading cannot cure them and would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming dismissal of *pro se* plaintiff's claim for failure to state a claim with prejudice and without leave to replead where even a liberal reading of the complaint failed to suggest the plaintiff had merely inadequately or inartfully pleaded and the plaintiff suggested no new material that could be pleaded to sufficiently reframe claim, such that repleading would be futile). In the instant case, even if Plaintiff could allege a viable conspiracy claim, Plaintiff still cannot overcome the fact that he was never formally offered, let alone employed, in the law library clerk position, such that Plaintiff was not adversely affected by the rescinding of the offer. Accordingly, the dismissal of Plaintiff's SAC should be with prejudice and without leave to replead.

## **CONCLUSION**

Based on the foregoing, Defendants' motion (Dkt. 54) should be GRANTED, with prejudice and without leave to amend, and the Second Amended Complaint should be DISMISSED with the Clerk of Court directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   November 18th, 2022
         Buffalo, New York

Case 1:17-cv-01109-JLS-LGF   Document 58   Filed 11/18/22   Page 19 of 19

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and to the attorneys for the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: November 18th, 2022
Buffalo, New York